UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

MAURICE BLALOCK,

                              Plaintiff,

         v.                                          9:14-CV-0052
                                                     (GLS/DEP)

BRIAN FISCHER, et al.,

                              Defendants.

───────────────────────────────

APPEARANCES:

MAURICE BLALOCK
97-A-4810
Plaintiff, pro se
Eastern NY Correctional Facility
Box 338
Napanoch, NY 12458

GARY L. SHARPE
Chief United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

         Presently pending before the Court is a pro se civil rights complaint filed by plaintiff

Maurice Blalock.  Dkt. No. 4 ("Compl.").  Plaintiff originally filed this action in the Southern

District of New York (the "Southern District") and requested leave to proceed in forma

pauperis.  Dkt. No. 5 ("IFP Application").  The complaint asserted wrongdoing by various

employees of the New York State Department of Corrections and Community Supervision

("DOCCS") that allegedly occurred at Green Haven Correctional Facility ("Green Haven

C.F."), which is located in the Southern District, and at Clinton Correctional Facility ("Clinton

C.F."), which is located in the Northern District of New York (the "Northern District").  *See generally* Compl.  By Order of Chief United States District Judge Loretta A. Preska of the Southern District, plaintiff's IFP Application was granted.  Dkt. No. 6.  By subsequent Order of United States District Judge Jesse M. Furman of the Southern District, the claims that arose at Clinton C.F. were severed and transferred to the Northern District.  Dkt. No. 1.  Those Northern District claims are currently pending review before this Court.

In addition to the original complaint, plaintiff has submitted an amended complaint. Dkt. No. 8 ("Am. Compl.").  Because the amended complaint is not signed by plaintiff as required by Rule 11 of the Federal Rules of Civil Procedure, and for other reasons discussed below, the Court will strike the amended complaint, and consider the original complaint to be the operative pleading, but only insofar as the original complaint asserts the Northern District claims that were severed and transferred here from the Southern District.

## II.    DISCUSSION

### A.    Initial Screening

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Therefore, the Court must determine whether plaintiff may properly maintain his complaint before permitting him to proceed.  Although a court has the duty to show liberality towards *pro se* litigants, see *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties

(but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), a court also has the responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.  "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241 (TJM/RFT), 2008 WL 268215, at *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325.

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure.  Rule 8 provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

3

Civ. P. 8(a)(2).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*

**B.    Review of Plaintiff's Northern District Claims**

In reviewing the complaint, only the claims that arose during plaintiff's confinement at Clinton C.F. after his transfer there on July 5, 2012, are before this Court.  Therefore, the only defendants in this Northern District action are the following:  Brian Fischer, Thomas LaValley, Steve Brown, D. Lucia, Sergeant Menard, Sgt. Fernia, Vann, Harry D. Durgan, Counselor Porcelli, and N.P. Calley.[1]

Construed liberally, plaintiff alleges the following claims:  (1) Eighth Amendment conditions-of-confinement claims against defendants LaValley and Brown; (2) claims that defendants LaValley, Lucia, and Brown violated plaintiff's religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc; (3) claims that defendants Menard, Fernia, Vann, and Porcelli verbally harassed and/or threatened plaintiff; (4) claims that defendants Fernia, Vann, Porcelli, and Durgan violated plaintiff's privacy rights; (5) a First Amendment retaliation claim against

_____

[1]  The claims which arose during plaintiff's incarceration at Green Haven C.F. prior to July 5, 2012, are pending in the Southern District, and are therefore not before this Court. *See Blalock v. Jacobsen*,  No. 1:13-CV-8332 (S.D.N.Y.).

4

defendant Porcelli; (6) a claim that defendant LaValley failed to properly address or investigate plaintiff's grievances; (7) a First Amendment mail-interference claim against defendant LaValley; (8) an Eighth Amendment medical indifference claim against defendant Calley; and (9) supervisory claims against defendants LaValley, Brown, and Fischer.  Plaintiff seeks monetary damages and injunctive relief.  Compl. at 59-65.  For a more complete statement of plaintiff's claims, refer to the complaint.

The facts relevant to the Northern District claims are set forth as alleged by plaintiff.

### 1.  Eighth Amendment Conditions-of-Confinement

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety."  *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment.  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective

5

and subjective element.  *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  A plaintiff

must demonstrate that (1) the conditions of confinement resulted in "unquestioned and

serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.

1985); *see also Jolly*, 76 F.3d at 480, and (2) that the defendants acted with "deliberate

indifference."  *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).  "Where . . . conditions of

confinement do not result 'in unquestioned and serious deprivations of basic human needs' or

'deprive inmates of the minimal civilized measure of life's necessities,' the United States

Supreme Court has held that such deprivations do not rise to the level of a violation of the

Eighth Amendment."  *Beckford v. New York State Office of Mental Health*, No. 06-CV-0561,

2010 WL 1816689, at *12 (W.D.N.Y. May 3, 2010).

Here, plaintiff alleges that upon his arrival at Clinton C.F. on July 5, 2012, he was

placed in a Special Housing Unit ("SHU") cell which was "uninhabitable."  Compl. at 24.  The

toilet bowl was cracked, and moldy towels and clothing were wrapped around it because

water leaked from it when it was flushed.  *Id*.  The seat of the toilet bowl was "smeared [with]

defecation" and plaintiff had no cleaning supplies.  *Id*.  The mattress was worn and there

were cigarette ashes and old tobacco under it.  *Id*.  Clothes, old newspapers, tobacco, and

trash were under the bed, and the locker contained trash and roaches.  *Id*.  Since it was too

late to complain to an officer, plaintiff washed the sink, brushed his teeth, "made purification,"

prayed standing on the sheets that he was given, and went to sleep.  *Id*.  The following day,

he was moved to a different cell "which was a little better."  *Id*.  Although the conditions that

plaintiff describes are far from pleasant, he states that he only remained in this cell for one

night, and the allegations do not plausibly suggest that he was deprived of a basic human

need during this short period of time.  Moreover, plaintiff provides no facts to indicate that

6

either defendant LaValley or Brown were aware of the conditions in this particular cell on that night, and thus there is nothing to plausibly suggest that either defendant was deliberately indifferent to the conditions that plaintiff allegedly faced on his first night at Clinton C.F.

Plaintiff also alleges that he was transferred to a new SHU cell the next day, and the living conditions in SHU "were clearly a health violation." *Id*. at 25. Plaintiff received three showers a week each lasting only five minutes; one shower stall was inoperable; the shower walls were moldy and the lights were broken; the food trays were delivered with the foods mixed together as a result of movement during delivery; the porters delivered food with the same gloves that they used to clean the floors; the noise level in the unit was "extreme" because gang members were allowed to shout to each other between cells; plaintiff had no access to a phone, was not allowed to buy stamps until a few weeks before his release from SHU, and could not "purchase food to supplement the Departments' nutritionally poor diet;" and plaintiff was "locked in a cubicle style cage with nothing in it" for recreation, and for the majority of the time in SHU, he would forgo recreation because he was subjected to gang members and other offenders who had broken institutional rules. *Id*. at 26-27. Again, while the conditions that plaintiff describes are not pleasant, they are insufficient to state an Eighth Amendment inadequate conditions-of-confinement claim. *See, e.g., Rhodes v. Chapman*, 452 U.S. 337, 347(1981) (Routine discomfort and restrictive or even harsh prison conditions "are part of the penalty that criminal offenders pay for their offenses against society."); *Branch v. Goord*, No. 05 Civ. 6495, 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (granting motion to dismiss complaint for failure to allege an objectively serious deprivation because "'[n]ormal' conditions of SHU confinement do not constitute an Eighth Amendment violation"); *Shannon v. Selsky*, No. 04 Civ.1939, 2005 WL 578943, at *6 (S.D.N.Y. Mar. 10,

2005) (solitary confinement for 23 hours a day with one hour of exercise and two showers per week is not an Eighth Amendment violation); *Dixon v. Goord*, 204 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (enduring "normal incidents of SHU confinement . . . are not violations of the Eighth Amendment").  *See also Hamilton v. Fisher*, No. 9:10-CV-1066 (MAD/RFT), 2012 WL 987374, at *8-9  (N.D.N.Y. Feb. 29, 2012) (Allegations that inmate was locked in a cell for twenty-three hours a day without any desk, chair, lockers, phone or package privileges, religious services, family day picnics, community events, re-entry and transitional services, or "humane conditions," and was subjected to "complete isolation, loud yelling, banging on cell doors, banging on walls, [and] feces being thrown," among other things, were found insufficient to allege an Eighth Amendment violation.) (citing *Griffin v. Coughlin*, 743 F. Supp. 1006, 1018 (N.D.N.Y. 1990) (An inmate normally cannot state a valid claim based on "inmate-generated" noise as an impermissibly harsh condition of confinement.) and *Williams v. Carbello*, 666 F. Supp. 2d 373, 379 (S.D.N.Y. 2009) (Allegations of unsanitary conditions that are "general in nature and do not specify any particularized facts regarding the . . . level of hygiene," do not state a claim upon which relief can be granted.)).  Plaintiff's allegations regarding his confinement in SHU are not specific enough to plausibly suggest that the conditions to which he was exposed, viewed collectively, were sufficiently "serious" to satisfy the objective prong of his Eighth Amendment claim, or to plausibly suggest that he was denied a basic human need.

     Plaintiff's Eighth Amendment conditions-of-confinement claims against defendants LaValley and Brown are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2.  Religion Claims Under the First Amendment and RLUIPA

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunie*r, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).

To state a First Amendment free exercise claim, plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted.)

Similarly, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

For a claim under both the First Amendment Free Exercise Clause and RLUIPA, a plaintiff must allege that his or her sincerely held religious beliefs were substantially burdened by defendant's conduct. *Singh v. Goord,* 520 F. Supp. 2d 487, 498, 509 (S.D.N.Y. 2007). In order to be considered a "substantial burden," the plaintiff "must demonstrate that the government's action pressure[d] him to commit an act forbidden by his religion or prevent[ed] him from engaging in conduct or having a religious experience mandated by his faith."

9

*Muhammad v. City of New York Dep't of Corr.,* 904 F. Supp. 161, 188 (S.D.N.Y. 1995) (citations omitted); *see also Jones v. Shabazz,* 352 Fed. App'x 910, 913 (5th Cir. 2009) (holding that a "government action or regulation only creates a substantial burden on a religious exercise if it truly pressures an adherent to significantly modify his religious behavior and significantly violate his religious beliefs").

Plaintiff is an Orthodox Muslim.  Compl. at 24.  Construed liberally, plaintiff alleges that, consistent with his faith, he has a beard which exceeds the one inch length normally allowed by DOCCS, and is required to attend religious services and hem his pants above his ankles.

### a. Beard Length

On July 11, 2012, plaintiff was escorted to a room to receive a Clinton C.F. identification card.  Compl. at 24.  While there, an officer noticed that plaintiff's beard was longer than the one inch allowed by DOCCS, and told plaintiff that his 2004 beard permit, which had been issued by DOCCS Central Office, was not recognized at Clinton C.F. and he would have to either apply to defendant LaValley for an exemption sticker to place on his identification card, or shave his beard to the one inch length.  *Id*. at 24-25.  Plaintiff claims that defendant LaValley violated his religious rights under the First Amendment by requiring him to obtain an additional beard permit at Clinton C.F. "even though [plaintiff] was already in possession of a statewide permit."  *Id*. at 60.  Plaintiff does not allege that he was denied the required sticker for his beard, or that he was required to shave his beard.  There is nothing to plausibly suggest that the additional administrative requirement to obtain an exemption sticker interfered with plaintiff's religious exercise or substantially burdened his ability to practice his religion.

Thus, plaintiff's First Amendment Free Exercise and RLUIPA claims against defendant LaValley with respect to plaintiff's beard length are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Religious Services

On July 16, 2012, defendant Lucia denied plaintiff's request to attend religious services on July 20, 2012, claiming that plaintiff had a poor discipline history. Compl. at 25, 61. Plaintiff wrote to defendant Brown, requesting to attend Jumu'ah services on August 3, 2012, explaining that the services during August, the month of Ramadan, were especially important to his faith. *Id*. at 27. Plaintiff received no response and was again denied the right to attend religious services. *Id.* Plaintiff was never allowed to attend weekly religious services during his ninety days of confinement in SHU.[2] *Id*.

Construing the complaint liberally, plaintiff alleges that defendants Lucia and Brown violated his rights under the First Amendment Free Exercise Clause and RLUIPA by denying him the right to attend religious services. Compl. at 60-61. Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the complaint alleges enough to warrant a responsive pleading from defendants Lucia and Brown to plaintiff's First Amendment and RLUIPA claims regarding his inability to attend religious services. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

---

[2] Plaintiff states that he was released from SHU to general population on August 30, 2012. Compl. at 28.

### c. Pant Length

Defendant Lucia "was obviously unaware of the amendment" to DOCCS directives, allowing Muslims to shorten their pants above the ankle at all times, because Lucia gave plaintiff a "direct order . . . to only wear his pants in this manner on Fridays for services." *Id*. at 31, 61; *see also* Dkt. No. 4-1 at 17-18. Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the complaint alleges enough to warrant a responsive pleading from defendant Lucia to plaintiff's First Amendment and RLUIPA claims regarding the length of plaintiff's pants. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Verbal Harassment and Threats

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under 42 U.S.C. § 1983 ("Section 1983"). *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

On March 14, 2013, defendant Menard "began eyeballing" plaintiff, and whispered something to the gallery officer while looking at plaintiff. Compl. at 32. Defendant Menard also told the Islamic chaplain that the way that plaintiff wore his pants was a sign of homosexuality, which plaintiff contends was "[t]otally disrespectful and unacceptable

12

behavior" by defendant Menard. *Id*. at 61-62. Defendant Fernia harassed plaintiff about the length of his pants, "became visibly agitated" with plaintiff on one occasion, "harassed and profiled plaintiff almost immediately upon him entering general population," and exhibited "behavior and tactics toward plaintiff [that] were totally unprofessional and obviously discriminative considering all of the threats made to plaintiff." *Id*. at 40, 56, 62. On April 11, 2013, defendant Vann harassed plaintiff about the length of his pants. *Id*. at 34. Another inmate informed plaintiff that defendant Vann had stated that the next time Vann had to speak to plaintiff, "it was going to go south!" *Id*. at 37. Plaintiff felt threatened by this comment. *Id*. at 62. Plaintiff claims that defendant Vann's "behavior was both totally unprofessional and unacceptable." *Id*. at 56. On May 15, 2013, defendant Porcelli harassed plaintiff about a Freedom of Information Law ("FOIL") request that plaintiff had submitted; defendant Porcelli "towered over plaintiff with such aggression that at one point [plaintiff] believed that [Porcelli] would strike him." *Id*. at 42, 60. Plaintiff alleges that defendant Porcelli showed up at plaintiff's vocational program and "bother[ed plaintiff] with his belligerence." *Id*. at 46.

Construed liberally, plaintiff alleges that he was verbally threatened and harassed by defendants Menard, Fernia, Vann, and Porcelli. These claims are dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Right to Privacy

The United States Supreme Court has held that people have a right to avoid disclosure of "personal matters" as a protected privacy interest. *Whalen v. Roe*, 429 U.S. 589, 599 (1977). Although prisoners retain certain constitutional rights, "[l]awful incarceration brings

about the necessary withdrawal or limitation of many privileges and rights[.]" *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).  Thus, in the prison context, the Supreme Court has instructed that courts should balance society's interest in having secure penal institutions with the prisoner's interest in privacy in order to determine whether the prisoner's expectation of privacy is "legitimate" or "reasonable." *Hudson v. Palmer*, 468 U.S. 517, 527 (1984) (holding that prisoners do not have legitimate expectations of privacy in their prison cells).

Plaintiff alleges that defendant Fernia told the facility Islamic chaplain that plaintiff had an appointment with the mental health department "in complete variance with departmental policy."[3]  Compl. at 37, 62.  Defendant Vann told another inmate that he escorted plaintiff to an appointment at the mental health department.  *Id*. at 62.  Plaintiff has alleged no facts to plausibly suggest that defendants Fernia or Vann divulged any confidential  information about plaintiff's mental health status.  Indeed, plaintiff states that Fernia and Vann were required to leave the treatment room prior to plaintiff speaking to the mental health professional, therefore, they were not privy to what plaintiff discussed with the mental health staff.  *Id*. at 35-36.

Plaintiff alleges that defendant Porcelli held plaintiff's quarterly reviews at plaintiff's cell gate and at the front door of the housing unit "within earshot of staff and offenders, and Porcelli "ridiculed" plaintiff when he requested privacy.  *Id*. at 63.  Plaintiff alleges no facts to plausibly suggest that plaintiff's confidential information was discussed during these reviews, or that any correctional officer or inmate overheard these conversations.

---

[3]  Insofar as plaintiff alleges that defendant Fernia violated DOCCS regulations, the law is settled that the failure to follow a DOCCS Directive or prison regulation does not give rise to a federal constitutional claim. *Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. 2001). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (Suddaby, J.) (collecting cases).

Finally, plaintiff alleges that his right to privacy was invaded because defendant Durgan, a notary public, read his legal papers when he notarized them, and when plaintiff requested that copies be made of his legal work, defendant Durgan took the papers to another area of the prison and gave them to another inmate to run the photocopies.  Compl. at 63.  The Court finds that these allegations do not give rise to any constitutional claim against defendant Durgan.  Here, the legal documents that defendant Durgan, or another inmate, allegedly read were presumably intended to be submitted to the courts, where they would be readily available to the public.  Thus, the Court finds that plaintiff had no legitimate expectation of privacy in his legal work.  *See Salvatierra v. Connolly*, No. 09 Civ. 3722, 2010 WL 5480756, at *22 (S.D.N.Y. Sept. 1, 2010) (holding that a plaintiff did not have a constitutional right to privacy claim where correctional officer allegedly looked at the plaintiff's legal papers); *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) (disclosure of judicial proceedings does not implicate the right to privacy); *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) (The constitutional right to privacy does not protect information that is readily available to the public.).[4]

In light of the foregoing, plaintiff's privacy claims against defendants Fernia, Vann, Porcelli, and Durgan are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[5]

---

[4]  Moreover, "[i]nmates do not have a free-standing privacy right that prevents prison officials from inspecting inmates' belongings." *Salvatierra*, 2010  WL 5480756, at *22 (citing *Soldal v. Cook County*, 506 U.S. 56, 65 (1992) ("an inmate, because of his status, enjoy[s] neither a right to privacy in his cell nor protection against unreasonable seizures of his personal effects") (citing *Hudson v. Palmer*, 468 U.S. 517, 526-28 (1984))).

[5]  Furthermore, to the extent that plaintiff's allegations against Durgan could be construed to allege interference with plaintiff's access to the courts, plaintiff has failed to state a claim upon which relief may be granted.  Although the Constitution protects an inmate's right to pursue legal actions without undue interference by prison officials, such a claim must dismissed where, as here, the inmate has not alleged any "actual injury." See *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously,

15

### 5. First Amendment Retaliation

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff alleges that defendant Porcelli harassed him because plaintiff made a FOIL request to Porcelli, and filed a grievance against him.  Compl. at 64.  Plaintiff also alleges that defendant Porcelli made contradictory statements regarding plaintiff's right to transfer to another facility; told plaintiff that he would not "'come up for a schedule[d] transfer' while [he] was classified Max A[;]" and that "this maneuvering by Mr. Porcelli was deliberate and retaliatory." *Id*. at 48.

Since plaintiff alleges that defendant Porcelli's actions were taken because plaintiff filed a grievance, plaintiff satisfies the first prong of the retaliation test. *See Baskerville v.*

---

and (2) that the plaintiff suffered an actual injury).

16

*Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases) ("A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment.").

To meet the second prong of the retaliation test, plaintiff must allege that defendant took adverse action against him because he filed grievances. The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* Conduct that is de minimis does not give rise to actionable retaliation. What is de minimis varies according to context. *Dawes*, 239 F.3d at 493. As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes,* 239 F.3d at 491 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493.

Verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim. *See Cabassa v. Smith*, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) ("Courts addressing claims of verbal threats and harassment advanced to support First Amendment retaliation claims have uniformly held that such conduct is not sufficiently serious to meet this standard") (collecting cases); *Battice v. Phillip*, No. CV-04-0669, 2006 WL 2190565, at *7

(E.D.N.Y. Aug. 2, 2006) ("The Second Circuit has held that '[i]nsulting or disrespectful comments directed at an inmate' generally do not rise to the level of conduct that would deter an individual from exercising his or her constitutional rights.") (quoting *Davis*, 320 F.3d at 353).

Here, at best, plaintiff alleges that defendant Porcelli harassed plaintiff and threatened him after plaintiff filed a grievance against him.  Thus, plaintiff's First Amendment retaliation claim against defendant Porcelli is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6.  Failure to Adequately Investigate or Address Grievances

It is well-established that a prison inmate has no constitutional right of access to such an internal grievance process.  *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983).  Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Thus, insofar as plaintiff alleges that defendant LaValley did not adequately address or

investigate plaintiff's grievances against staff, that claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. First Amendment Mail-Interference

Among the protections enjoyed by prison inmates, subject to appropriate limitations, is the right "to the free flow of incoming and outgoing mail" guaranteed by the First Amendment. *LeBron v. Swaitek*, No. 9:05-CV-0172 (GLS/DRH), 2007 WL 3254373, at *6 (N.D.N.Y. Nov. 2, 2007) (quoting *Davis*, 320 F.3d at 351).  That right, however, must yield to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities, in which case no constitutional violation has occurred.  *Duamutef v. Hollins*, 297 F.3d 108, 112-13 (2d Cir. 2002) (citing, *inter alia, U.S. v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996)).  "The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'"  *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995) (quoting *Turner v. Safely*, 482 U.S. 78, 84 (1987)).

Here, plaintiff alleges that defendant LaValley "denied plaintiff his right to communicate with the outside world by censoring his mail without just cause."  Compl. at 60.  In support, plaintiff alleges that he received a letter from his brother asking why plaintiff had not responded to his previous three letters; plaintiff claims he did not receive his brother's previous letters, thus suggesting to plaintiff that he had been placed on a mail watch.  *Id*. at 28.  Plaintiff asked defendants Brown and LaValley if there "was a mail watch" against him; both answered that they could neither confirm nor deny his question.  *Id*. at 29-30; *see also*

Dkt. No. 40-2 at 3-8.  Mindful of the requirement to liberally construe pro se pleadings, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 191, the Court finds that the complaint alleges enough to warrant a responsive pleading from defendant LaValley to plaintiff's First Amendment mail-interference claim against him.  In so ruling, the Court expresses no opinion as to whether plaintiff's claim can withstand a properly filed motion to dismiss or for summary judgment.

### 8.  Eighth Amendment Medical Indifference

The Eighth Amendment prohibits cruel and unusual punishment which encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citations and quotations omitted).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes*, 452 U.S. at 349).

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.  *See Farmer*, 511 U.S. at 825, 834.  Deliberate indifference has two necessary components, one objective and the other subjective.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Objectively, the deprivation must be "sufficiently serious," creating a risk of "death, degeneration, or extreme pain."  *Id*.  Subjectively, the official must have the requisite state of mind, which is the "equivalent of criminal recklessness."  *Id*.

The protections afforded by the Eighth Amendment do not extend to remedy harms

which may be inflicted as a result of conduct amounting to negligence or medical malpractice but not encompassing conscious disregard of an inmate's health.  An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle*, 429 U.S. at 105-06.  Additionally, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Id*.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Estelle*, 429 U.S. at 107 (noting that medical decisions such as whether or not to order X-rays or other "diagnostic techniques" do not rise to the level of cruel and unusual punishment but "implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."); *Graham v. Gibson,* No. 04-CV-6088, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation."); *Jones v. Westchester Cnty. Dept. of Corrs. Med. Dept*., 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire.  Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'").  "Determinations made by medical providers within their discretion are given a 'presumption of correctness' when it concerns the care and safety of patients."  *Mendoza v. McGinnis,* No. 9:05-CV-1124 (TJM/DEP), 2008 WL 4239760, at *11 (N.D.N.Y. Sept. 11, 2008).

Plaintiff alleges that defendant Calley's "handling of plaintiff's chronic blood pressure fell well below the acceptable standard of treatment." Compl. at 64. In support, he alleges that on April 25, 2013, defendant Calley refused to take plaintiff's blood pressure. *Id*. "Due to [defendant Calley's] incompetence, plaintiff did <u>not</u> receive the medical diet until thirty days later." *Id*. On July 11, 2013, defendant Calley refused to take plaintiff's blood pressure, but because plaintiff had been monitoring his own blood pressure "through sick call visits and it remained high," he asked defendant Calley to prescribe him "water pills (i.e. hydrochlorothiazide, 25 mg tabs)" and she did. *Id*. at 54, 64. Plaintiff's allegations against defendant Calley suggest at best a disagreement with treatment or negligence, neither of which state an Eighth Amendment claim. Moreover, plaintiff has alleged no facts to plausibly suggest that defendant Calley acted with the requisite deliberate indifference. Indeed, defendant Calley gave plaintiff medication when he requested it.

Thus, plaintiff's Eighth Amendment medical indifference claim against defendant Calley is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 9. Supervisory Claims

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978)). In order to prevail on

a Section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted).

A supervisor cannot be liable for damages under Section 1983 solely by virtue of being a supervisor; there is no respondeat superior liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501;

*Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986).[6]

Plaintiff alleges that defendant LaValley, as the Superintendent, is responsible for ensuring that DOCCS rules and regulations are followed at Clinton C.F.; defendant Brown is "responsible for the safety and security of plaintiff, both of which he failed grossly [and] his lack of supervision allowed plaintiff to live in squalid conditions throughout his time in SHU status[;]" and defendant Fischer, as the Commissioner of DOCCS, is "obviously ultimately responsible for the proper operation" of DOCCS facilities. Compl. at 59-60, 65.[7] Plaintiffs, "conclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to allege involvement of a supervisor. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

Plaintiff's supervisory claims against defendants LaValley, Brown, and Fischer are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## C.   Amended Complaint

Initially, the Court notes that plaintiff has not signed the amended complaint as required under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11(a). Pursuant to Rule 11(a), the Court would typically provide plaintiff with an opportunity to correct this

---

[6]  Whether all five *Colon* factors for supervisor liability remain available in light of the Supreme Court's decision in *Iqbal*, 556 U.S. 662, has been debated by the district courts in this circuit. *See, e.g., Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), *rev'd in part on other grounds sub nom., Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster . . . ."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that *Iqbal* eliminated *Colon*'s personal involvement standard). Regardless of whether *Colon* or an *Iqbal*-limited standard applies, plaintiff has failed to allege any claims against defendants LaValley, Brown, or Fischer based upon their roles as supervisors.

[7]  More specific claims against defendants LaValley and Brown are discussed herein above. *See* Part II.B.1, 2, 6, and 7.

deficiency before striking the unsigned pleading.  *See id.*  However, in this case, having

reviewed the amended complaint, the Court concludes that, even if it were properly signed, it

would not be accepted for filing **in this action**.  First, the amended complaint asserts claims

against Southern District defendants arising out of his confinement at Green Haven C.F.

between February, 2009, and July 4, 2013.  Am. Compl. at 7-29.  Jurisdiction for those claims

was retained by the Southern District and are part of a separate case pending in the

Southern District.  *See Blalock v. Jacobsen*, No. 1:13-CV-8332 (S.D.N.Y.).  Therefore, any

amended pleading submitted in this action should not, and may not, include those Southern

District claims.

Second, the amended complaint attempts to assert claims against new defendants,

five who are identified as employees of Clinton C.F., and seven who are identified as

employees of Shawangunk Correctional Facility ("Shawangunk C.F.").  Am. Compl. at 5-7,

70-75 (new Clinton C.F. claims), 75-94 (new Shawangunk C.F. claims).  While plaintiff

purports to submit this amended complaint as of right pursuant to Fed. R. Civ. P. 15(a), the

new claims against new defendants occurring subsequent to the claims asserted in the

original complaint are more appropriately categorized as supplemental claims under Fed. R.

Civ . P. 15(d).  Rule 15(d) permits the Court, "on motion" to allow the filing of a supplemental

pleading "setting out any transaction, occurrence, or event that happened after the date of the

pleading to be supplemented."[8]  Fed. R. Civ. P. 15(d).  "[T]he purpose of a supplemental

complaint is to allow the inclusion of new defendants and new claims arising since the date of

the original pleading, if the new claims are 'adequately related to the original claims.'"  *Smith*

---

[8] Plaintiff has not filed a motion to supplement, as required by Rule 15(d), but in light of his pro se status, the Court will liberally construe the portion of his amended complaint wherein he seeks to add new claims as his motion to file a supplemental complaint.

*v. Goord*, No. 04-CV-6432, 2006 WL 2850597, at *1 (W.D.N.Y. Sept. 22, 2006).  "As a general matter, Rule 15(d) 'reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties.'"  *Beckett v. Incorporated Village of Freeport*, No. CV 11-2163, 2014 WL 1330557, at *9 (E.D.N.Y. Mar. 31, 2014) (citations omitted).  "However, this 'liberal policy' under Rule 15(d) is predicated on whether 'the supplemental facts connect [the supplemental pleading] to the original.'"  *Beckett*, 2014 WL 1330557, at *9 (citations omitted); *see also Albrecht v. Long Island R.R.*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991) (Rule 15(d) allows a party to supplement a pleading with matters that occurred after the filing of the original complaint, but pertain to the original pleading.); *McLean v. Scully*, No. 90 Civ. 2590, 1991 WL 274327, at *1 (S.D.N.Y. Dec. 9, 1991) (the supplemental pleading should be "adequately related to the originally stated claims").  The decision to grant or deny a Rule 15(d) motion is committed to the sound discretion of the district court.  *Phillips v. LaValley*, No. 9:12-CV-0610 (DNH/RFT), 2013 WL 1681422, at *5-6  (N.D.N.Y. Mar. 1, 2013).

Plaintiff's new claims arising at Clinton C.F. subsequent to the filing of his original complaint relate to his alleged exposure to second hand smoke, being denied a particular program assignment on the basis of discrimination, his alleged harassment, and alleged issues with his grievances.  *Id*. at 70-75.  Plaintiff's requests to amend to allege verbal harassment or failure to address grievances are denied as futile, as none of those allegations would state a claim under Section 1983.  *See* Part II.B.3 and 6, *supra*.  The remaining new claims arising out of plaintiff's confinement at Clinton C.F., and the claims asserted against Shawangunk C.F. defendants, are not "adequately related to the original claims" set forth in the complaint.  *See Smith v. Goord*, 2006 WL 2850597, at *3.  Indeed, none of the defendants named in the original complaint are alleged to have been involved plaintiff's

second hand smoke or discrimination in programming claims that occurred at Clinton C.F., or in the alleged wrongdoing that occurred at Shawangunk C.F. after plaintiff was transferred to that facility in September, 2013.  Simply stated, the supplemental allegations that plaintiff seeks to add to his original complaint are not sufficiently related to the conduct complained of in plaintiff's original complaint, many of the supplemental allegations occurred at an entirely new correctional facility, and the original defendants are not alleged to have been involved in the proposed supplemental claims.  Thus, the Court finds that plaintiff has failed to meet the threshold requirement establishing a connection between the Clinton C.F. claims in the original complaint (*see* Compl. at 24-56) and the new allegations asserted in the supplemental portion of the amended complaint (*see* Am. Compl. at 70-94).  Plaintiff's request to add the proposed supplemental claims to the present action is therefore denied. *See, e.g., Phillips*, 2013 WL 1681422, at *6 (denying motion to supplement because plaintiff's new claims involved events which were unrelated to his allegations in the original complaint, the majority of the new allegations occurred at an entirely different facility more than four months after plaintiff filed his original complaint, and the alleged wrongdoing was perpetrated by individuals not named in the original complaint); *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988) ("[A] court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if it all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts and related to a defendant not implicated in the original complaint.").

Accordingly, for the foregoing reasons, the amended complaint is not accepted for

filing, and will be stricken from the docket.[9]

### III.    CONCLUSION

WHEREFORE, it is hereby

ORDERED that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted:  (1) the Eighth Amendment conditions-of-confinement claims against defendants LaValley and Brown; (2) the claim that defendant LaValley violated plaintiff's religious rights under the First Amendment and RLUIPA; (3) the claims that defendants Menard, Fernia, Vann, and Porcelli verbally harassed and/or threatened plaintiff; (4) the claims that defendants Fernia, Vann, Porcelli, and Durgan violated plaintiff's privacy rights; (5) the First Amendment retaliation claim against defendant Porcelli; (6) the claim that defendant LaValley failed to properly address or investigate plaintiff's grievances; (7) the Eighth Amendment medical indifference claim against defendant Calley; and (8) the supervisory claims against defendants LaValley, Brown, and Fischer;[10] and it is further

ORDERED that defendants Fischer, Menard, Fernia, Vann, Durgan, Porcelli, and Calley are **DISMISSED without prejudice**; and it is further

ORDERED that the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Lucia, Brown, and

---

[9]  If plaintiff wishes to file claims relating to the alleged constitutional violations not related to the claims in the original complaint, committed by new defendants at Clinton C.F. or Shawangunk C.F., he may do so by filing separate civil rights actions.

[10]  Should plaintiff seek to pursue any claims that were dismissed from the original complaint  without prejudice, he must file an amended complaint.  Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

LaValley.  The Clerk shall also forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the claims remaining against them be filed by defendants Lucia, Brown, and LaValley, or their counsel, as provided for in the Federal Rules of Civil Procedure;[11] and it is further

**ORDERED** that the Clerk is directed to strike the amended complaint (Dkt. No. 8) from the docket report; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so will result in the dismissal of this action**; and it is further

---

[11] Specifically, the Court requires a responsive pleading from defendants Lucia and Brown with respect to plaintiff's First Amendment Free Exercise and RLUIPA claims against them; and from defendant LaValley with respect to plaintiff's First Amendment mail-interference claim.

**ORDERED**, that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated:   July 14, 2014
          Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court